Good afternoon. Before we start, I'd like to welcome Judge Eugene Seiler from the Sixth Circuit who is sitting with us today. We're happy to have him and we thank him for making the trip and helping out our court. So welcome, Gene Seiler. Thank you. First case today will be Doe v. Governor of Pennsylvania. May it please the court, my name is Aaron Martin. I represent the appellant. I'd like to reserve three minutes of rebuttal time, please. That'll be granted. Your Honors, I represent a private citizen who is licensed as a public school teacher in Pennsylvania. He is today, at this very moment, under threat of criminal prosecution if he would so much as disclose the mere existence of an investigation into his conduct. Prosecution by whom? By the Commonwealth of Pennsylvania. By whom? What person? Criminal prosecutions in Pennsylvania can be commenced either by the Office of Attorney General or by the various district attorneys. Can the Secretary of Education bring such a case? No. So the Secretary's out. The Secretary has threatened that this law be applied to my client. The letters that came to my client... But you're really in jeopardy from the Attorney General, are you not? That's correct, for a criminal prosecution. It seems to me that's the proper defendant here, the Attorney General. Whom we have named, yes. But not the others. Well, I would submit that the Governor's Office is also a proper respondent. Why would that be? Because under the Commonwealth Attorneys Act, the Governor's Office of General Counsel has residual criminal prosecutorial jurisdiction to commence a criminal prosecution if the Attorney General's Office would choose not to. So you're telling me that the Governor can institute a prosecution on his own? Yes, if the Attorney General would choose not to, and I've cited that provision in my brief. Has that ever happened? I'm not aware of that happening. However, in the challenge to same-sex marriage in Pennsylvania, when that was brought, the Attorney General refused to defend the law in Pennsylvania, and the Governor's Office of General Counsel did in fact undertake that defense, and that was pursuant to a similar provision. But that's not a criminal case. Correct, that's not. Does an ex parte Young say that there has to be some realistic potential that they will do so? Well, I agree that Young requires that the respondents be linked to the action which is challenged. The reason we've named them is because they're the ones who have sent these letters that have put my client under written threat of criminal prosecution. Now, what link in the chain they bear, they will certainly not be the charging officials, but they are the ones who are involved in stating this threat that could very well lead to the charge, and that's why we named them. This threat against my client continues despite the fact that the investigation that was initiated was resolved without any charge, without any hearing, and in fact with no finding of misconduct whatsoever. We submit that the District Court erred in denying without a hearing our request to preliminarily enjoin this statute, which restricts speech about the workings of government, and that in fact this court should remand with binding instructions that such an injunction be entered, and I'm going to advance two reasons today why that should be. We submit that the appellees cannot establish as a matter of constitutional law that this restriction on speech can satisfy strict scrutiny, which is the applicable standard, given that this is a law which restricts speech. Your argument is, I take it, Judge Jones just sort of said, well, he's not going to be charged, and therefore there's nothing really here. Is that it? Well, Judge Jones said that the reason, now of course his order was very scant, but he entered that order after the investigation, the disciplinary investigation had terminated. However, the letter which came to my client, the second letter, renewed the threat of prosecution if he would disclose this letter which exonerated him. So my client is still under a threat of prosecution if he would even tell his own wife that he's been exonerated from an investigation which he also was not allowed to disclose. Well, if you lose on this preliminary injunction, will it go back to Judge Jones and then he could flesh it all out and get a final judgment here? What about that? There would be a trial and a permanent injunction, but, Your Honor, the reason we requested a preliminary injunction is in part for what has happened in the history of this case. We're now 11 months on where my client's fundamental right to speech has been suppressed. And the precedent of this Court and the Supreme Court is that even a momentary suppression of the right to speech is something which gives rise to the need and the propriety of equitable relief. I mean, how much longer must my client go being unable to talk to his own wife and to his family members about a major occurrence in his life without threat of being charged with a third-degree misdemeanor? That's exactly what has happened here. The Commonwealth doesn't seem concerned about him talking to his wife or telling the public at large. It seems like they're defending the case, and I'll hear from counsel, but the brief indicated that they're concerned about a fishing expedition where really your client's not interested in just sharing this information and speaking about it. What he's really interested in is finding out who made a claim against him. Well, let me respond to that. Here is the very narrow scope of relief we are requesting, a preliminary injunction which allows him to disclose truthful information lawfully within his possession about a closed investigation. And why not a permanent injunction? That's better relief. Well, it will be, and we will be seeking that, and we did request that in the complaint. All right, so you're not interested. This isn't about digging through the files to try to seek retribution against somebody. No, it has nothing to do that. Just about having the same ability to speak that someone who is found guilty and publicly reprimanded under the same statute. That's exactly right, Your Honor. That's exactly what we're seeking. And we believe that that arbitrary distinction, such that the guilty teacher may speak and the innocent teacher is gagged, is something which shows that the restriction on the innocent teacher cannot be the least restrictive means of advancing whatever compelling governmental interest the appellees put up. Let's just stop for a minute. The relief you're seeking, though, is basically taking this law offline for everyone, not just your client, right? Your Honor, let me explain, I think, how that misunderstanding arose. The law is unitary, meaning it is not broken down into subsections where A says this applies to state employees, B says this applies to teachers, C it applies to the press. It is one law that says anyone. My client is in his own position just by virtue of who he is. His only response to being threatened with this law was to challenge this law. But we are not seeking relief beyond what he himself would be entitled to. It's not a class action. We're not seeking relief for anyone else. He merely wants to be able to recite the historical fact of what happened. And there's a personal benefit to him for doing that, because if he's able to disclose in this factual situation, which was of some notoriety. I appreciate what you're saying he wants, but if we give him the relief he wants, wouldn't we in essence be doing what was done in Stilp, where in that case the Public Official and Employee Ethics Act fell because it didn't survive strict scrutiny? The same would occur here, to Judge Shigaris's point. Well, Your Honor, that would be if the court would make a declaration as to the constitutionality of the law itself. At this stage in the proceeding, where it's a preliminary injunction, we are only asking that there be a finding that he is likely to proceed in a trial on the merits. Now, the court in Stilp, which I argued incidentally, did go a little bit beyond what might in fact have been merely a preliminary injunction ruling. But I think what was happening in Stilp was, I don't want to speak for how the court was thinking, but in that situation, that precedent actually illustrates another problem with this law as it's applied. Whoever complained about my client is now free today under Stilp to go tell the entire world that a complaint was filed with the Department of Education about my client and can do that at any time. My client is powerless to respond to that. He can't even say I didn't do that? Well, he could say I didn't do the underlying thing that you're saying I did wrong, but he's not able to disclose that he's been exonerated, that the evidence is so scant that that complaint never resulted in a charge. He can't do that. Now, he could lie and be out of jeopardy from this statute. This is the irony of the whole thing. If he said, no, that's not true, there was never an investigation, he can't be prosecuted because he hasn't disclosed the existence of an investigation. What, really, were you seeking here to send it back to the district court and proceed on the merits or what? We are asking for the case to be sent back. At a minimum, at a minimum, it was error for the court to deny this relief without a hearing because there is, I would argue, not merely colorable, but an undisputed and every material way factual basis on which this issue can be decided. But we are asking for this matter to be sent back with instructions to the district court that because this law is so arbitrary in its restriction on speech, the appellees cannot demonstrate as a matter of First Amendment jurisprudence that, in fact, this is the least restrictive means of accomplishing the government interest. This clearly suppresses speech and it suppresses speech about the operations of government, which is entitled to strict scrutiny. Given that there was no hearing, by definition, the appellees could not carry their burden of proving that there was satisfaction of the strict scrutiny standard. However, we believe, as we said, that they cannot do this on remand. I've mentioned that it's been almost an entire year that my client has been unable to speak, even to his wife or family members, without fear of criminal prosecution. I'm going to mention one other thing, too. The cost to have an attorney today arguing in front of the United States Court of Appeals in filing fees alone has been in excess of $900. Now, I submit that that is an extraordinary expense for a man to be able to speak to his own wife without fear of prosecution. This law is so sweeping.  I'm sorry, Your Honor? She gets angry at me. Your Honor, that is not our principal concern, but I use that as an illustration because this law sweeps so broadly, it would be illegal for him to talk to a mental health professional about this, a clergyman. Now, those conversations might be privileged, but they're not immunized. And here, because the actual fact of communication is itself criminalized, there would be a crime fraud exception anyway. The contradictions in this statute, as applied to my client, multiply the more it's analyzed. And we are asking the court to do what's right and within your power to do, which is to grant the summary relief so that he will be relieved from this speech prison that he's been in. You hold the key, and we humbly ask that you would use it. Where did you request the hearing in the district court? We filed a motion for preliminary injunction. And did you ask for a hearing, or did that issue come up? Was that directly addressed, or did it just sort of fizzle out with the judge? Yes, and that was part of the reason why there was a joint stipulation of facts, which was in furtherance of holding a hearing in order to consolidate some of the issues. Right, so really the mistake from your perspective that the district court made was that once he was exonerated, the district judge mistakenly believed the matter was concluded, and it became a mootness issue, essentially. Correct, and no longer saw that, in fact, there was the ongoing suppression of my client's speech rights, which was independent of this disciplinary process. So I see that my time is up. Thank you, counsel. Thank you. We'll hear from you on rebuttal. Good afternoon. May it please the court, my name is Sean Kirkpatrick with the Office of Attorney General, here on behalf of the governor and the attorney general and the secretary of the Department of Education. And if I could correct, I believe, some misstatements that were made about the authority of the Office of General Counsel. The Office of General Counsel cannot prosecute crimes on behalf of the Commonwealth. What is being referred to by my friend on the other side is Section 301 of the Commonwealth Attorneys Act, which gives the Office of General Counsel the ability to defend Commonwealth agencies and even initiate civil proceedings. But the authority to prosecute on behalf of the Commonwealth is exclusive to the district attorneys and to, in limited circumstances, the Office of Attorney General pursuant to, I believe it is, 201 of the Commonwealth Attorneys Act. But there was a threatening letter from the Office of General Counsel. There was, yes, your honor. On behalf of the attorney general? I mean, that was intended to have a chilling effect, obviously. I disagree, your honor. Well, then why was it sent? Because it was to inform. In fact. Inform that if you violate this law, we're going to be coming after you. Absolutely, because. And who's going to be coming after him? The attorney general, right? No, your honor. Who? The district attorney. The district attorney. It would be the local district attorney. It would be like any other crime, shoplifting, murder. It would be a crime that would fall to the district attorney. What if the district attorney declined it? Unless the district attorney declined it. Then the attorney general has the ability to bring it? No, not under that provision, your honor. There is a provision within Section 201 that allows a district attorney to refer a matter to the attorney general because of conflicts or because the district attorney does not have the resources necessary to. You're saying the attorney general has no authority here to. To enforce this law. That's an open question, your honor. And if I can explain why that's an open question, because goodness knows I don't like to say I don't know to this court. The opposite attorney general's power to prosecute on behalf of the Commonwealth is capped by the Commonwealth Attorneys Act. And there is a provision, and that is 201A6, which allows a Commonwealth agency to refer enforcement of an action to the opposite attorney general. And here the Commonwealth agency at issue would be the Department of Education, right? Well, no, your honor. It would be the commission. I'm sorry, right, the commission which cut a delegation. Right. Okay. And that's the rub. Because if you look at the definition in 201 of the Commonwealth Attorneys Act, which defines Commonwealth agency, it's a defined term, there's two possible entities. Executive agency and an independent agency. Now, the independent agency is an enumerated list of the Milk Marketing Board and the Fish Commission and the State Ethics Commission, which is why we were a proper defendant in Stilt. The Pennsylvania Standards and Practice Commission is not listed there. So then it becomes a question of is it an executive agency? And it is, the Commonwealth Court has ruled that it is an independent body. But, quite frankly to this court, it does have certain aspects which, it is separate from the governor's office, but it has certain aspects which might make it an executive agency. We don't know. And I think that's telling because we have never prosecuted anyone under this statute. And you have no intention of doing so? We have no intention of doing. But we can enter, you know, we can, as part of our order, we'll enter an order saying that. You're barred from prosecuting. That will give Mr. Martin's client the comfort that he seeks. In Rhodes, this court said that there must be a real, not ephemeral likelihood of enforcement. Right, but I mean, why not make it official? Are you objecting? That's my question. What I'm hearing you say is that we've never done this before. We have no intention of doing it. We're not even sure we have the power to do it. If all that's true, then I don't suppose there's any objection. Right, exactly. Well, Your Honor. Maybe we don't have jurisdiction. Is there no case or contradiction? I don't believe there is, Your Honor. And that's what we argue in our brief. Frank can tell his wife. Or the next door neighbor. Mr. Doe could always tell his wife because there is an exception under the statute that says that you may, nothing in the confidentiality provision prevents you from making any communications to anyone to aid your defense. His wife was able to witness. The defense is over. Well, yeah, but. He wants to tell people now. That is correct, Your Honor. And he, presumably, some people in the region probably heard that this fellow, Doe, was under cloud. That's the whole point of this whole thing. He wants to be able to, from his perspective, he's been officially exonerated, and it's not far-fetched to understand why he might want to be public about his exoneration. Isn't that all that's going on here? Two points on that, Your Honor. One is he may speak at whatever length he wishes about the criminal charge. That has nothing to do with this. So what cloud he may be under because of the actions he took in his neighborhood, he is completely free to discuss and deny and refute. The second point is that this statute was created to, mainly, quite frankly, to protect teachers. And that's what the. I understand it was well-intentioned, but it seems a lot like Stilp. This seems like a sister case to Stilp. I disagree, Your Honor. You've got a gag order on someone who has been deemed, if not innocent, charges unfounded. And you're gagging the person from telling whomever he wishes that the cloud that he was laboring under for whatever period of time was lifted. And the presumption there with the cloud being lifted is perhaps he was falsely accused. Number one, Your Honor, no one knows of the cloud. That's the point of the confidentiality provision. Secondly, in Stilp, the individual who was Mr. Stilp was the one who filed the charge with the state ethics commission. And also, there is a big difference between public officials and people running for public office and teachers and students. If a, if the. Again, Mr. Martin has already conceded that they have no interest in outing the complainant. And again, maybe I'm being too pragmatic here, but there seems to be some daylight between both of your positions where everyone could be made whole and made happy here. If the teacher, the complainant, I don't know if it's a teacher or administrator or whom, if the complainant can be protected, then the intention of the legislation is satisfied. And if Mr. Doe can speak his mind consistent with the First Amendment without outing the complainant, then why does it why don't you both win? Well, there is a process in which he can go in front of the commission. He tried. They denied him. And he did not appeal to the Commonwealth Court, which is the process. So we can again get back to it's we're no longer talking about a facial challenge. And to be fair to the district court, the injunctive relief that was requested was very much broader than what we are now talking about right now. But the. What we would suggest is. Oh, I'm sorry. So that's the facial challenge. The as applied a challenge that we're now talking about, just as to Mr. Doe. The question becomes, as applied by whom? Not the governor, not the attorney general. And the Commonwealth attorney of some locale file charges. Yes. Whether we're enjoined or otherwise. I mean, if he wherever he lives, if he says something there to the press, the Commonwealth attorney there can proceed. If he comes to Philadelphia, the Commonwealth attorney here can proceed by Commonwealth attorney. You mean the district attorney for the municipality? Sure. Yes. That's why in joining us is of no moment. That's why there's a case in controversy problem in this case. Now, if this court disagrees with that, the the normal course of this procedure got interrupted. We think rightfully so. But if this court disagrees. What we argue in our brief and what we argue now is that you should send it back. But to have a hearing that this court should not, without a record and in a vacuum, make practical determinations as to what injunctive relief is proper in what context, without giving us any opportunity to have a hearing and present not only. Indeed, not even a finding by the district court as to whether this is a content, neutral or content based statute, etc. That would be sort of violating our typical role as a court of review rather than a court of first view. We think it would be wise for this court to have an opinion upon which it can review. And you do not have that beyond the two sentences of the order. And we interpret that order as a recognition that there was no case in controversy. But if this court disagrees, if this court finds it has jurisdiction or that 11th Amendment is not a bar, then the proper avenue would be to send it back and we can have a hearing and we can fully brief it. We've never had an opportunity to brief this down. You're admitting error by the district court. No, Your Honor, I'm the court did not err. If you find that there is no case in controversy. If you do not find, then yes. And I would admit that. Without an opinion, it makes it very difficult for this court to make these determining court to make that decision first or us. Whether there's a case or controversy. No. Well, Your Honor, I believe the court did. And it said once there was no threat of prosecution, none of the defendants had any role in this case anymore. Because this is a statute that the commission regulates, has promulgated regulations for, and that the district attorney for the municipality actually prosecutes. So that was the recognition. Do I wish I was standing here on top of an opinion? Yes, I do. Absolutely.  If, however, this court disagrees, we suggest respectfully that the court send it back down to finish that process, have a hearing, have full briefing, have the district court render its decision, and then we can actually discuss this with a record. I mean, I take it, maybe it's come through in your brief, but I guess it's a little confounding for you folks. This is not the average person the law is meant to gag, I guess. Well, that is absolutely true. The law is designed to protect teachers. That's why the amicus filed a brief in this case. Their members are teachers. But it also has the dual responsibility of protecting the children, protecting parents, making sure that people feel comfortable coming forward and making complaints. But nonetheless, the broad sweep covers your friend across the aisle. And if there's a case in contra, perhaps we need to have a hearing to explore where the parameters of that lie. Doesn't the attorney general have the power to prosecute violations of the confidentiality provision under Section 732-205A6 if the commission refers the case to him? 205A6? Yes. Well, that's where I was discussing whether the commission is in fact a Commonwealth agency under 201. And you're saying it's not, or it's unclear? I'm saying we don't know because that has never happened in the history of my office. We've never gotten a referral, and we've never prosecuted anyone. And quite frankly, I've asked several people who've looked into it, and there's no case law that I can find looking into this. And we would have to, once a referral happens, make that determination at that point, which is why I say that it is not likely that we will ever be prosecuting, especially given the fact that I'm standing here right now. I'm not sure I understand that. Why does you being here now, why should that give Mr. Martin confidence that the attorney general would not prosecute his client? Because I'm saying that we have never done so in the past. It would be one thing for him. But it doesn't matter. There's a first time for everything. What matters is if you're willing to state on the record we will not do so in the future, essentially a consent decree or a consent injunction. Well, one, my office can't enter consent decrees, and two, I do not have authorization to speak on behalf of our criminal division. I'm saying what in looking at the law. So if someone gets in charge of the criminal division and says, hey, we've got a problem here, we've got too many people exonerated, falsely or wrongly accused of teachers, and now they're talking and they're raising a ruckus, and now we're going to prosecute them under this law. That could happen. It seems unlikely, but it could happen. And the question before this court, then, is whether under the right circumstances, if all dominoes fall in the right order, whether the legal possibility of potential criminal prosecution is a sturdy enough read upon which to stand 11th Amendment immunity. So my time has expired. Thank you, Counsel. Thank you, Your Honor. To one of the points that Counsel made, the Attorney General's office is not so bold as to say what it is hinting at, which is that we should have sued all 60-plus district attorneys in Pennsylvania. But apparently under their reasoning, that's the only way we could be assured that there would be no prosecution, because my client could travel anywhere in the state, in fact, merely broadcast the information anywhere in the state, and potentially that would be proper venue for a prosecution to lie. Now, that's an absurd prospect, that an individual challenging a state law would have to sue 60-plus local officials, when, in fact, the Attorney General himself is the Chief Law Enforcement Officer of Pennsylvania, as you heard, does have jurisdiction, at least in some circumstances. Well, how do we know? I mean, what do you say about this agency issue that Mr. Kirkpatrick was referencing? Well, I submit to the extent that that's unclear, that is on the state. That's on the appellees. That is not my client's situation, given that he's on the receiving end of these threats. And for him to stand up and to suggest, for the Commonwealth to suggest, through their agents, that this has never been prosecuted before, well, I've never heard of that being much of an effective legal defense in a criminal courtroom. I suppose maybe that's happened a couple times in our history, but that doesn't give my client a whole lot of confidence when he's gotten two letters within the past 12 months threatening him, including the exoneration letter. And that's probably the most galling of all, because with that exoneration letter, this process was over. We are now talking about his ability to recite a historical fact of a proceeding, which is over, which will never be opened again. How can they argue that, in fact, there is harm to the teacher disciplinary system for my client to be able to say something about a now-closed investigation for a proceeding which will never be reopened? A guilty teacher could, and yet mine cannot. And that's why we've gone to the extraordinary extent of asking for this unusual relief, because we do believe that there's no way strict scrutiny can be satisfied. And unless this Court is going to say and agree with the unvoiced yet suggested course of action that a counsel has said, that we have to sue all 60-plus district attorneys in Pennsylvania to get relief, I submit that a practical approach, and one which does not offend the 11th Amendment, is that the chief law enforcement officer of Pennsylvania, with criminal prosecutorial jurisdiction statewide, is in fact the proper respondent for a suit such as this. Right. Even if that's true, don't you still need relief from the district attorneys? Because if an injunction is entered blocking the attorney general from prosecuting your client, that does not impair the district attorney in the county in which Doe resides from doing that. Well, that is true in a technical sense. However, we are confident that the district attorney will respect an injunction against the attorney general. It's almost unconscionable. And you're willing to roll the dice on that? I mean, what if the district attorney has a different idea about whether these things should be prosecuted? We'll address that issue if it arises, Your Honor. And do you agree with Mr. Kirkpatrick that findings are needed? I mean, we don't have much to go on here. Well, Your Honor, I don't believe findings are needed, and the reason is that as a matter of law, this statute fails, because it's undisputed as a matter of fact that this law is applied arbitrarily, whereas the guilty can speak, the innocent is gagged. But the trial judge hasn't even made any findings of fact. There are no conclusions of law. We don't know whether the trial judge thinks that strict scrutiny should apply. Is it content-based? Is it content-neutral? We don't have any of that. The public's interest? Public interest, right. Well, the public interest. Valuing of the equities, none of that has happened. I guess that's sort of a given in a First Amendment case. Right, but I submit. That's what you're going to tell us, right? Yeah, I submit that the case law is clear, the precedent of the Supreme Court even, is clear that on a First Amendment case, this court has things to go by, and that those elements are, in fact, satisfied. And that's what we're arguing to this court. Okay. Thank you, counsel. Thank you. We thank both counsels for their excellent arguments. We'll take the case under advisement. And if counsel's amenable, we'd like to meet you at sidebar to thank you in a more personal way.